### FARGO GAS LIGHT AND COKE CO. v. JOHN T. GREER ET AL.

1. DISREGARDING DEFENSE CURES ERROR IN NOT STRIKING FROM ANSWER.
   Instructing the jury to disregard a defense (the doctrine of estoppel) cures the error in overruling the motion to strike such defense from the answer.

2. PLEADING A CONCLUSION OF LAW AMOUNTS TO NOTHING.
   An averment, in the answer to an action to recover from an attorney a sum of money which he retains as fees, following and concluding allegation of facts, that plaintiff, having placed claims in the hands of defendant for collection, is estopped from claiming any part of the money which defendant retains as fees, is a mere legal conclusion and amounts to nothing.

3. PROPER AND MATERIAL FACTS IN IMPERFECT PLEADING.
   So much, however, of the averment as stated facts, though imperfectly pleaded, was material and proper and should not have been ruled from the case.

4. ATTORNEY AND CLIENT—AUTHORIZED PAYMENT TO AGENTS.
   An attorney who receives for collection accounts and bills receivable, assigned by an insolvent firm to a dormant corporation, from one who is acting as agent and sole representative of such corporation, and was at one time its president, and who was also a member of and general manager for said insolvent firm, is justified in paying the proceeds of such collections over to and upon the order of such agent, without further or direct order or contract with the corporation itself.

5. CONTRACT ENTITLING ATTORNEY TO FEES AND CREATING A LIEN THEREFOR.
   The action of such agent, as assignor and assignee, or as sole representative of the two concerns, amounts to a contract of service with the attorney, which entitles the latter to fees for making the collections and creates a lien therefor on moneys in his hands, without further contract with or direct authority from the corporation itself.

Gas Light and Coke Co. v. Greer.

KING, J.

Plaintiff brought suit in the court below to recover about $1,782, which it claimed defendant had in his hands belonging to plaintiff, refusing to pay it over.

Defendant in his answer denied all the allegations of the plaintiff's petition, and set up in addition that certain claims were placed in his hands for collection by the firm of Cray & Rood. That he had collected and disbursed the same, amounting to over $10,000, pursuant to their directions, except that he still held the $1,782 which he claimed was due him as his reasonable compensation for his attorney fees incurred in collecting and disbursing the money, winding his answer up with the allegation that the plaintiff was estopped from claiming any part of the money in question. There was a motion made to strike out this defense, which was overruled. A demurrer was filed to it, and that was overruled, to which the plaintiff excepted. A reply was filed denying it, and the case went to trial to the court and jury, resulting in a general verdict for the defendant. Considerable portion of the argument for plaintiff in error is directed to what it claims is the error of the court in overruling the motion and demurrer, and is based upon the idea that there was nothing in the case or answer involving the doctrine of estoppel. Considerable of the argument advanced on that question is, no doubt, well reasoned and well founded, but after all will not be considered at length by us for two reasons:

First—On the trial of the case the court instructed the jury to disregard this defense, and so the plaintiff was not prejudiced by the refusal to strike it out earlier in the progress of the case.

Second—The averment in this answer that the plaintiff is estopped is a mere legal conclusion, amounting to nothing, and we think that so much of this so-called defense as states facts was material to the issue proper in the case, that the court should have overruled the motion and demurrer, and if it committed any error, it was in instructing the jury not to regard it. While this so-called defense might have been more perfectly and artistically stated, it still was a proper defense, and in our judgment ought not to have been ruled from the case. Many exceptions were taken to the introduction of evidence. We pass these by, saying that we think there was no error in the ruling of the court upon the admission and rejection of evidence prejudicial to the plaintiff in error. A great deal of testimony was taken, and much of it no doubt in a consideration of the issues finally was immaterial. And yet the matters were somewhat involved, and on the trial the court could not well tell just what evidence would be material. The case is somewhat peculiar. Cray & Rood were a firm composed of the two persons whose names make the firm name. Rood was the principal manager and talker for the firm. Rood had some years before been connected with the plaintiff and was its president if it had any. For years before the transactions involved in this case, the corporation had sold all its property to another, at least all its tangible property. Rood was also connected with another corporation known as the Fostoria Light and Power Co., of which he was also president. Rood acting for the firm, knowing his insolvency and the insolvency of the firm, gave certain cognovit notes to individuals to whom the firm was indebted, to prefer them as creditors. He then took the book accounts owing to the firm, amounting to quite a sum, and transferred a part of these to the Fostoria Light and Power Co. and a portion to the plaintiff. He was the only person who acted either for the firm

or for either one of these two corporations. He made a list of these accounts, and wrote an assignment thereon to each of the corporations in question or he procured it to be done. This was done with the knowledge of Cray, his co-partner, but he seems to have taken no further interest in the matter. The business was transacted by Rood, and so far as any of these personalities were represented by a living person, Rood was that person. He was the assignor and the assignee in fact. He claimed that the firm of Cray & Rood were indebted to each of these corporations. It is difficult from this mass of testimony to ascertain what the fact is with reference to that. We cannot tell whether the firm was indebted to either one of these corporations, but assuming that it was, the corporations were represented by nobody. but Rood. He placed these accounts and bills receivable personally in the hands of the defendant to collect and to disburse upon his own order. The defendant collected them and he paid them out as Rood directed. Not a dollar is shown to have been paid except upon the direction of Rood. Another peculiarity of this transaction is that they were not paid out directly to the corporation, as shown by the checks and receipts and orders given, but a large part of this money was paid to persons whom Rood directed it to be paid to, other than these corporations, and a goodly sum was paid to Rood himself and to pay his individual debts. Now, it is claimed by the plaintiff that it had no contract with Greer by which Greer would have a right to charge it for collecting its claims, and that it may come in here and sue Greer and compel him to pay over all he has collected, because it never employed him to collect any. It is true the plaintiff concedes that Greer should have something for his compensation, but insists upon the right to fix that compensation. And it admits that there is something like $200. due to Greer for his services. A careful and thorough examination of this record leads us to the conclusion that the jury decided this case correctly. It may be that Greer rendered services in these matters which were worth the sum which he claims, and that is not seriously contested here by the plaintiff, but the plaintiff is insisting that he rendered those services for Cray & Rood and must look to Cray & Rood for his pay. This would be and is certainly an anomalous situation and position. So far as the transactions themselves were concerned, Mr. Greer knew nothing about the plaintiff, as he was told by Rood that certain of these accounts had been transferred to and were owned by the plaintiff. Rood assumed to and did represent the plaintiff, and he controlled the disbursement of this money and for all practical purposes he may as well have received all of it from his attorney and agent as the part which he did receive. He did not undertake to separate the proceeds of the accounts assigned to the plaintiff from those assigned to the Fostoria company except incidentally, but those proceeds from whatever claims collected were controlled by him and were in effect owned by him. It is seriously disputed by the defendant that the plaintiff was the owner of these claims or that Cray & Rood were indebted to it, but we do not undertake to unravel that from the peculiar system of book-keeping which was instituted and carried on by Rood. It is enough to say that a practical jury taking, a common sense view of this transaction, looking upon the whole thing as the act of Mr. Rood; that he was the owner buyer and seller, assignor and assignee, directing what should be done, how it should be done, when it should be done, and to whom the results should all accrue, and hence the jury might well have found that the plaintiff

Gas Light and Coke Co. v. Greer.

had no interest in the controversy, but if they could not have found that they would have been equally justfied in finding that the defendant had; a lien upon the money collected from these accounts for all his ser-' vices; that having received his orders from Rood, and Rood being the only principal or authoritative agent known in the transaction, he was justified in paying from the funds collected, as Rood ordered, reserving only so much to himself as would finally settle his compensation, and when he had reached that point in the distribution, he would have a right to say : "The balance I will hold for my services or until my ser-vices shall have been adjusted and agreed upon." Rood, and no one for him, attempted to settle with Greer for his services. When the time for paying Greer came then Rood's agency ceased. His authority, to nego-tiate for this company that had no other living representative, so far as disclosed, but himself, seems to have terminated, and the corporation, a nonentity, comes in here to bring this action and unjustly take from Greer that which he has earned, to which he is entitled.

We are well satisfied that the verdict and judgment are right and they are therefore affirmed.      *